Jimmy Wayne EVERSOLE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

April 1, 1977.

Rehearing Denied June 10, 1977.

Jack E. Farley, Public Defender, Gary E. Johnson, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Jimmy Wayne Eversole, Mellie Holcomb and Odell Farley were charged by the Grand Jury with the murder of Green Gibson. KRS 507.020(1)(a). In a previous trial, the jury was unable to reach a verdict. Farley was granted a severance. In a subsequent trial which gives rise to this appeal, the jury found Eversole guilty of murder and fixed his punishment at 20 years and 1 day in the state penitentiary. Mellie Holcomb was acquitted. The trial court sentenced Eversole in conformity with the jury's verdict. Eversole prosecutes this appeal. He contends: (1) the trial court should have given an accomplice instruction; (2) the evidence was insufficient to support a conviction; (3) the trial court should have instructed the jury on lesser degrees of homicide; (4) the trial court's instructions should have required the jury to reach a unanimous verdict, not only as to guilt of murder, but also as to which alternative method the murder was accomplished.

This is a sordid drama of the events that occurred on May 24, 1975, culminating in the brutal slaying of Green Gibson.

Because the testimony of the witnesses was inconsistent as to the events, it is necessary to relate the facts in some detail. It is apparent that some of the witnesses did not tell the truth. Several witnesses placed Eversole at the scene where the altercation between Eversole and Gibson took place. Eversole and Mellie Holcomb deny seeing Gibson on May 24, 1975.

The records of the hospital show that Gibson was admitted on May 25, 1975, and died June 1, 1975. When Gibson was brought to the hospital he was semi-conscious. He had swelling on the right side of the scalp and abrasions of the skull. The physicians' report and the death certificate read at trial showed the cause of death to be "epidural hematoma and severe brain damage."

Roberta Shepherd testified that on Saturday, May 24, 1975, she met Eversole, Mellie Holcomb and Green Gibson in a tavern. They invited her to join a party and offered her a sum of money to go with them. She went with Eversole and the others to his house. Later all of them went to Mellie Holcomb's house. Roberta was drunk. She took a nap. She was awakened by Eddie Saylor, who was attempting to remove her clothes. She fought Saylor and the noise brought Mellie and her daughter Loretta into the room. They aided Roberta in resisting Saylor's advances. Roberta testified that she took another nap. She was awakened by Eversole shining a light in her eyes. He was asking Gibson, who was sitting on the bed, for the $50.00 he claimed Gibson owed him. When Gibson refused to pay, Eversole followed him into the yard where a fight took place. Eversole knocked Gibson down three times. Gibson cut Eversole with a knife, and fled toward his truck. Eversole fired his gun and Gibson fell.

After this altercation Miss Shepherd and the others went inside the house and continued to drink. They were in the house about half an hour. The men then loaded Mr. Gibson into his truck and left. The women followed in a separate vehicle. They waited in the car while the men proceeded in the truck to a graveyard. Roberta heard "some banging" down under a hill.

Odell Farley, a defendant who was tried separately, stated that he and members of his family went to Mellie Holcomb's and

Jimmy Eversole's houses on May 24, 1975. There they played cards and continued drinking. While they were there, Gibson and John Dixon arrived. Farley and some of the others went swimming. When they returned Gibson and Eversole were playing cards. Gibson lost money to Eversole. Farley's testimony as to the altercation corroborated that of Roberta Shepherd. He was in the truck when the others drove it to the graveyard where Gibson was left. The women were then taken home. Farley, Eversole and Eddie Saylor returned to the graveyard, because "they wanted to finish him (Gibson) off." Eversole told Eddie Saylor to finish killing Gibson, and told Eddie, "If you don't I'll kill you." They then left Gibson and returned home.

John Dixon testified at the first trial of Eversole and Mellie Holcomb, but had died before the trial in this case. His prior testimony was read to the jury. Dixon's prior testimony was that Gibson had been living with him for two months. He and Gibson went to Harlan on May 24, 1975, the day of the altercation. They stopped at either Eversole's or Mellie Holcomb's home on the way back. Gibson asked Eversole to take him to Harlan and pick up Roberta Shepherd, and he would pay him $50.00. Eversole, Mellie Holcomb and Gibson left together and returned with Roberta Shepherd. Dixon contradicted the testimony given by Roberta Shepherd. He testified that Eversole struck Gibson lightly and that, "It wouldn't hurt a baby." Dixon testified that he saw Eversole fire "up in the air" and that Gibson did not fall to the ground.

Jack Brown, a part-time deputy sheriff, testified that on May 25, 1975, he was called to investigate an injured man in a graveyard. He found a pickup truck with Green Gibson in it. Gibson had a cut between 1 ½ to 2 inches across his chest. He was still alive, but did not respond to questions. A hawkbill knife and his wrist watch were found beside him. His empty wallet was found about 100 ft. from the truck.

At the close of the Commonwealth's case in chief, both Eversole and Mellie Holcomb took the stand in their defense. Eversole and Mellie Holcomb denied seeing Gibson at all on the day of the fracas. Eversole denied that he and Gibson played cards. He denied procuring a prostitute for Gibson or that he and Gibson fought.

Eversole's counsel introduced the testimony of Loretta Holcomb, Mellie's daughter. She had testified in the former trial, but was ill at the time of this trial. Her testimony, read to the jury, corroborated the testimony of Eversole and Mellie Holcomb.

■ Eversole's first assignment of error is that the only witnesses at his trial that connected him to the murder were accomplices as a matter of law. He contends that the trial court erred by not instructing the jury that such testimony required corroboration.

There is no merit to this argument. Eversole never requested an accomplice instruction as required by RCr 9.54. He cites *Stone v. Commonwealth*, Ky., 456 S.W.2d 43 (1970) as supportive of the requirement despite the failure to request an instruction required by RCr 9.54. *Stone, supra*, haunts this court in every case where counsel fails to do that which he is supposed to do. *Stone, supra*, has become like the clickety-clack caused by the needle on a cracked phonograph record. *Stone, supra*, is not a panacea to cure the ills caused by failure of counsel to abide by the rules of procedure promulgated by this court.

Despite the lack of preservation of this contention of error, the court was justified in refusing an accomplice instruction. All of the witnesses who knew of the facts leading to the murder were not accomplices.

Roberta Shepherd had no knowledge that Eversole was going to shoot Gibson. She did not know that Eversole was *going to* beat Gibson when he returned to the graveyard. She was a witness to the crime, not an accomplice.

Odell Farley did not participate in the first fight or the shooting. He did witness the beating and cutting of Gibson at the graveyard. However, his testimony was corroborated by Roberta Shepherd. At

most, Farley was a passive actor in the sordid drama of May 24, 1975.

John Dixon certainly was not an accomplice. There is no evidence that he caused the shooting or participated in the fight in the yard. Consequently, the witnesses about which Eversole complain did not meet the test of true accomplices.

Eversole's allegation that there was insufficient evidence to support the jury's verdict is baseless. He contends that the only substantive evidence was that of Roberta Shepherd, Odell Farley and John Dixon. He contends they were accomplices as a matter of law.

Eversole admits that he did not move for a directed verdict. However, he contends that the question should be preserved on the merits of *Stone v. Commonwealth,* supra.

Because Eversole never preserved the point for consideration on appeal he has waived it. This court will not now consider the question raised for the first time in this appeal. This court expects counsel to abide by its rules.

■ Eversole's third assignment of error was that the trial court should have instructed the jury on the lesser offense of homicide. However, Eversole never requested such instruction as required by RCr 9.54(2). His failure to do so precludes him from raising the point for the first time in this appeal.

■ Finally, Eversole contends that the court's instructions should have been clear and that the jury's verdict should be unanimous, not only as to guilt, but unanimous as to the alternative method the homicide was accomplished. It is true that the trial court's instructions contained two alternative theories of the cause of Gibson's death.

The trial court's Instruction No. I is as follows:

"You will find the defendants guilty under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

(a) That in this County before the finding of the indictment herein, the defendants, Jimmy Wayne Eversole and Mellie Hollins Holcomb killed Green Gibson by striking and beating the said Green Gibson with a deadly weapon or a dangerous instrument used in the manner of a deadly weapon;

AND

(b)(i) That in so doing they intended to cause the death of Green Gibson, the decedent;

OR

(ii) They were wantonly engaging in conduct which creates a grave risk of death to another and thereby caused the death of Green Gibson under circumstances manifesting an extreme indifference to the human life.

If you find the defendants guilty, you will fix their punishment at confinement in the penitentiary for not less than 20 years or at life, in your discretion."

It is obvious that the alternative instruction is erroneous because the trial court omitted "In so doing" from (b)(2), supra. However, Eversole failed to raise the question.

Eversole argues that this type of instruction could cause half the jury to believe the first theory, that is, he intended to cause the death of Green Gibson; and that half the jury could believe the alternative of wantonly engaging in conduct that caused the death of Green Gibson under circumstances manifesting an extreme indifference to human life. Thus, he contends there was no unanimity as to the cause of death and that it could not be determined by the form of the verdict which theory was adopted by the jury. The record reveals that Eversole requested no such instruction as required by RCr 9.54. In fact, he admits that no such instruction was offered.

As to unanimity the trial court's Instruction No. 4 required a unanimous verdict. Furthermore, Eversole could have polled the jury, which he failed to do. There is no constitutional issue here; there's a mere allegation of error which was not preserved for appellate review.

■ In conclusion, this court notes that all of Eversole's points deal either with error in the instructions or insufficiency of the evidence. This court on many occasions has determined that to preserve such points for consideration on appeal, the defendant must either offer an instruction which he contends should have been used, or move for a directed verdict. Eversole failed to do either. Because Eversole failed to preserve such points, this court will not consider them since they are raised for the first time in this appeal.

This court is of the opinion that the judgment should be and it is affirmed.

All concur.